IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GARY HILL AND CHARLIE CRAB LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAURICE PURNELL AND CHARLIE D'S<br>CATFISH CABIN LLC,<br><br>Defendants. | JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Gary Hill and Charlie Crab LLC (collectively "Mr. Hill"), for their complaint against Defendants, Maurice Purnell and Charlie D's Catfish Cabin LLC (collectively "Defendants"), state:

**Nature of the Case**

1. This is a civil action for direct and contributory trademark infringement, unfair competition, and false designation of origin arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for common law trademark infringement and unfair competition.

2. By this action, Mr. Hill seeks equitable and legal remedies for Defendants' repeated, persistent, and intentional infringement of Mr. Hill's intellectual property rights in the CHARLIE D'S SEAFOOD & CHICKEN and CHARLIE D'S EXPRESS trademarks (collectively, the "CHARLIE D'S Trademarks").

**Parties**

3. Plaintiff Gary Hill is a resident of the state of Missouri.

1

4. Plaintiff Charlie Crab LLC is a limited liability company organized and existing under the laws of the State of Missouri, with a principal place of business at 12323 E US Hwy 40, Independence, Missouri 64055.

5. Upon information and belief, Defendant Charlie D's Catfish Cabin LLC ("Charlie D's Catfish Cabin") is a limited liability company organized and exists under the laws of the State of Missouri, with a principal place of business at 6633 Raytown Road, Raytown, Missouri 64133, and Defendant Purnell serves as the company's registered agent for service of process.

6. Upon information and belief, Defendant Purnell is a resident of the state of Missouri. Upon information and belief, Defendant Purnell is the founder and owner of Defendant Charlie D's Catfish Cabin, and therefore, directs and controls the activities of Defendant Charlie D's Catfish Cabin, including its policies, procedures, and compliance with intellectual property laws, and knowingly has authorized, directed, and/or participated in the infringing activities described in the present Complaint.

**Jurisdiction and Venue**

7. This Court has subject-matter jurisdiction over Mr. Hill's federal Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338.

8. This Court has subject-matter jurisdiction over Mr. Hill's related claims arising under state law pursuant to 28 U.S.C. §§ 1338 and 1367.

9. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants engage in continuous and systematic business activities within the State of Missouri and this District, such as rendering, offering for sale, selling and providing services to Missouri-based and Kansas-based customers within this state and District; and/or regularly solicit business in this state and District, deriving substantial revenue from interstate commerce and from

this District; and/or have purposefully directed substantial activities at the residents of this District by means of advertising and selling services in violation of Mr. Hill's intellectual property rights, as further described in this Complaint; and/or have committed and directed the willful, tortious conduct described herein directed at persons located in Missouri and this District; and/or intended, knew, or reasonably should have known that their conduct would infringe intellectual property rights of Mr. Hill; and/or have committed and directed the willful, tortious conduct described herein directed at persons located in Missouri and this District; and/or have otherwise made or established contacts within Missouri and this District sufficient to permit the exercise of personal jurisdiction. Specifically, Defendants offer a restaurant in Missouri and within this District using a confusingly similar mark to Mr. Hill's CHARLIE D'S Trademarks without authorization, license, or permission from Mr. Hill.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims complained of herein occurred in this District and the intellectual property that is the subject of this action is owned by Mr. Hill, who operates its business under said intellectual property within this District.

**Factual Background**

**A. Mr. Hill's Development of the Charlie D's Brand and Intellectual Property Rights**

11. In 2010, Defendant Purnell opened CHARLIE D'S AND SONS restaurant located at 5311 Prospect Avenue, Kansas City, Missouri, which struggled and ultimately closed within six months of its opening.

12. Later in 2010, Defendant Purnell and Mr. Hill entered into a partnership and established CHARLIE D'S & SON'S CATFISH CABIN located at 3123 Swope Parkway, Kansas City, Missouri, making it the only Charlie D's restaurant in the area.

3

13. The 3123 Swope Parkway location required renovations, which Mr. Hill fully funded and managed, and Defendant's involvement was minimal during the renovation process.

14. In 2013, Defendant Purnell abandoned the partnership, as discussed further below, when he left Kansas City to pursue work in the construction industry outside of Missouri. Mr. Hill continued to oversee and manage the business operations on his own and in his capacity as sole owner of the restaurant.

15. In 2014, Mr. Hill opened the first location of CHARLIE D'S SEAFOOD & CHICKEN restaurant at 600 E 99th Street in Kansas City, Missouri, a second location in 2021 at 5111 Ararat Drive in Kansas City, Missouri, under the same name, and a third location that same year at 12323 E US Hwy 40 in Independence, Missouri, under the name of CHARLIE D'S EXPRESS.

16. Since at least November 1, 2014, Mr. Hill and his restaurants have continuously and exclusively used the CHARLIE D'S Trademarks, including CHARLIE D'S SEAFOOD & CHICKEN from that date, and CHARLIE D'S EXPRESS since at least May 20, 2021, without interruption to the present.

17. Consistently, Mr. Hill allocates $4,000 to $5,000 per month towards branding of the name and marketing efforts, which include social media campaigns, website management, highway signage, and the services of a dedicated marketing director.

18. Since opening his first CHARLIE D'S location, Mr. Hill has successfully owned and operated CHARLIE D'S branded restaurants for fifteen years, consistently refining his expertise and enhancing business operations to support the brand's long-term success.

19. Mr. Hill filed U.S. Trademark Application No. 99/039,946 to federally register the mark CHARLIE D'S SEAFOOD & CHICKEN and Mr. Hill's company, Charlie Crab LLC, filed

U.S. Trademark Application No. 99/129,818 to federally register the mark CHARLIE D'S EXPRESS.

**B. Defendants' Abandonment and Infringement on CHARLIE D'S Trademarks**

20. In 2013, Defendant Purnell chose to abandon the initial partnership in the restaurant when he left Kansas City to enter into the construction industry outside of Missouri.

21. Within a few weeks of Defendant's departure from Kansas City, he expressly told Mr. Hill that he was done with the Charlie D's business and that Mr. Hill could do whatever he wanted with it, confirming his abandonment of the partnership. Consequently, Mr. Hill ceased forwarding profit-sharing payments to Defendant and did not make any payment to buy out Defendant's interest in the business.

22. For the next six years, Defendant did not return to Kansas City to inquire about rejoining the business or participate in its operations. Defendant did not seek compensation, make contributions, or express any intent to return to the restaurant.

23. For the six years that Defendant was living and working away from Kansas City, he exercised no control over the provision of restaurant services by Mr. Hill or his businesses. Defendant made no statement of intent to use a CHARLIE D'S formative mark again, effectively abandoning any rights in the CHARLIE D'S Trademarks.

24. Defendant returned to Kansas City six years later and asked Mr. Hill for permission to use the CHARLIE D'S name with a food truck he had inherited. Defendant also asked whether he could use the restaurant at 600 E 99th Street as a required commissary for the food truck, and whether he could assist Mr. Hill at his restaurant. Mr. Hill agreed to each of these requests.

25. In 2019, Defendant returned to work as the restaurant manager at the 3123 Swope Parkway location. He was paid strictly as an employee of the restaurant.

26. In 2021, following the sale of the strip mall at the 3123 Swope Parkway location, Mr. Hill needed to move the restaurant to a new location. Mr. Hill found a suitable alternative location for the restaurant at 5111 Ararat Drive, Kansas City, Missouri. When the Swope Parkway restaurant closed, Defendant became the manager at the 5111 Ararat Drive location, and was paid as an employee of Mr. Hill's business.

27. Defendant inquired with Mr. Hill about reestablishing a formal partnership. Mr. Hill declined because of his own significant contributions to developing each of the restaurants' branding and operations, but discussed with Defendant the possibility of opening a new restaurant together.

28. Prior to the purchase of the property at 5111 Ararat Drive, Mr. Hill discussed with Defendant the opportunity to invest in the property—not the business—by each party contributing $50,000 toward the purchase. However, Defendant did not timely provide his contribution to the purchase. Mr. Hill had to complete the purchase solely with his own funds resulting in only Mr. Hill's name appearing on the property title.

29. Even though his contribution of funds was late, Mr. Hill agreed to let Defendant participate in the real estate investment. But, after Defendant provided Mr. Hill with money to invest in the 5111 Ararat Drive property following its purchase, Defendant eventually requested the return of his contribution. Mr. Hill subsequently returned the contribution to Defendant, divesting him of any ownership interest in the property.

30. Defendant's compensation as a manager at 5111 Ararat Drive ceased when he subsequently stopped working in that role at the restaurant.

31. In or around late summer 2024, Defendant approached Mr. Hill with the proposal of pursuing a new restaurant venture in the historic Jazz District of Kansas City which Mr. Hill expressed an interest in.

32. In September 2024, Mr. Hill and Defendant met with Cary Taylor of Crossroad Real Estate Group to help fill out a request for proposal regarding their new restaurant venture in the historic Jazz District.

33. While Mr. Hill was in the process of planning the next steps for the new venture in the historic Jazz District, Defendant began to independently establish a restaurant using the CHARLIE D'S branding, all without the knowledge or involvement of Mr. Hill. On information and belief Defendant reached out to Mr. Hill's vendor, U.S. Foods, and sought to use Mr. Hill's menus, to-go-menus, menu screens, and logo at his new location.

34. U.S. Foods representative Dave Rohr called Mr. Hill to inform him of Defendant's request to use Mr. Hill's CHARLIE D'S branding. Mr. Hill refused that request. Defendant Purnell then contacted Mr. Hill and asked permission to use his CHARLIE D'S brand, which Mr. Hill refused.

35. In Spring 2025, Defendants, Mr. Purnell and Charlie D's Catfish Cabin LLC, opened CHARLIE D'S CATFISH CABIN at 6633 Raytown Road, Kansas City, Missouri, located 3.7 miles from Mr. Hill's 5111 Ararat Drive restaurant location and 3.9 miles from Mr. Hill's 12323 East US 40 Highway restaurant location.

36. The selection of the location of CHARLIE D'S CATFISH CABIN was a deliberate attempt to trade off the name of Mr. Hill's establishments. Defendants' CHARLIE D'S CATFISH CABIN features a sign with stylized blue lettering for "Charlie D's," incorporating a catfish into one of the letters, and they are using a similar menu at comparable prices, resulting in a copycat

7

restaurant designed to confuse customers into believing it is affiliated with Mr. Hill's establishments.

37. On April 29, 2025, on behalf of Mr. Hill, counsel for Mr. Hill sent a letter to Defendants, advising them of Mr. Hill's prior intellectual property rights in the CHARLIE D'S Trademarks in connection with his restaurants, and demanding that Defendants immediately cease and desist from all use of Mr. Hill's proprietary intellectual property.

38. Defendants' counsel and counsel for Mr. Hill exchanged communications on subsequent occasions, each of which resulted in Defendants declining to cease and desist from their use of in the CHARLIE D'S Trademarks in connection with Mr. Hill's restaurant.

39. Defendants' use of a nearly identical variation of Mr. Hill's CHARLIE D'S Trademarks in connection with identical services marketed to identical consumers is likely to, and inevitably will, lead consumers to erroneously believe that Defendants' restaurant is affiliated, connected, or otherwise associated with Mr. Hill's established CHARLIE D'S brand and the services offered and provided using a confusingly similar mark to the CHARLIE D'S Trademarks.

40. Customers coming into the nearby 5111 Ararat location have repeatedly commented on and assumed that the infringing restaurant opened by Defendant was affiliated with Mr. Hill's restaurants. Moreover, on information and belief customers have assumed that Defendants' CHARLIE D'S CATFISH CABIN was part of his business and have redeemed or attempted to redeem Mr. Hill's restaurant coupons at Defendants' location.

41. Defendants' continued violation of Mr. Hill's intellectual property rights after various notifications from Mr. Hill has been willful, in bad faith, with malicious intent, and with blatant and intentional disregard for Mr. Hill's proprietary rights established in his CHARLIE D'S Trademarks.

42. Upon information and belief, Defendants have generated profits through the misappropriation of the CHARLIE D'S Trademarks, to which they are not entitled.

43. Defendants have clear knowledge of the above-detailed infringing activities and continue to display, direct, and contribute to ongoing infringing operations; and therefore, Defendants are infringing on Mr. Hill's proprietary CHARLIE D'S Trademarks by knowingly authorizing, directing, controlling, and/or substantially participating in the advertising, promotion, provision, offer for sale, and/or sale of an identical and competing restaurant under identical and/or nearly identical CHARLIE D'S Trademarks, without authorization from the true rights owner.

## Count I – Trademark Infringement
## 15 U.S.C. § 1125(a)(1)(A)

44. Mr. Hill realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

45. Mr. Hill owns all right, title, and interest in the CHARLIE D'S Trademarks in connection with his restaurants located in the Kansas City area.

46. Mr. Hill has had exclusive rights in the CHARLIE D'S Trademarks in connection with restaurants, dating back to at least as early as 2013.

47. Defendants' use of "Charlie D's Catfish Cabin" described in this Complaint constitutes trademark infringement, as it infringes Mr. Hill's trademark rights, in violation of 15 U.S.C. § 1125(a)(1)(A), in part because (i) the parties' respective trademarks are identical in the dominant part of the marks; and (ii) the parties' respective services offered thereunder are identical.

48. Defendants' unauthorized use of "Charlie D's" creates the erroneous impression in consumers' minds that Defendants' restaurants are approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated, associated, or connected with Mr. Hill's restaurants and Mr. Hill's CHARLIE D'S Trademarks.

49. Defendants' use of "Charlie D's" has caused irreparable injury to Mr. Hill by destroying consumers' association of the CHARLIE D'S Trademarks with Mr. Hill, allowing Defendants to unjustly profit from Mr. Hill's goodwill acquired and established in the CHARLIE D'S Trademarks, and engendering confusion in the marketplace.

50. Mr. Hill has no adequate remedy at law for Defendants' misconduct.

51. Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and Mr. Hill's injuries will continue to occur.

52. Mr. Hill is entitled to recover up to three times actual damages, in an amount to be proven at trial, which may include without limitation (i) Defendants' profits gained as a result of Defendants' infringement; (ii) any damages sustained by Mr. Hill as a result of Defendants' infringement; and (iii) the costs of this action.

53. Defendants' intentional and willful misconduct renders this an exceptional case, entitling Mr. Hill to attorney's fees and interest.

## Count II – Unfair Competition and False Designation of Origin
## 15 U.S.C. § 1125(a)

54. Mr. Hill realleges and incorporates by reference the averments of paragraphs 1- 43 as if set forth fully in this paragraph.

55. Defendants' use of "Charlie D's" described in this Complaint constitutes unfair competition and false designation of origin, which is likely to deceive customers and prospective customers of this District and elsewhere throughout the United States into believing that Defendants' restaurant offered under "Charlie D's" is that of Mr. Hill, and as a consequence, is likely to divert and inevitably has already diverted customers away from Mr. Hill.

56. Defendants' false designation of origin and acts of unfair competition have caused and are continuing to cause irreparable injury to Mr. Hill, which Mr. Hill has acquired and established.

57. Mr. Hill has no adequate remedy at law for Defendants' misconduct.

58. Unless Defendants are enjoined and restrained from continuing their use of "Charlie D's", Mr. Hill's injuries will continue to occur to the detriment of Mr. Hill.

59. Mr. Hill is entitled to recover up to three times actual damages, in an amount to be proven at trial, which may include without limitation (i) Defendants' profits gained as a result of Defendants' false designation of origin and acts of unfair competition; (ii) any damages sustained by Mr. Hill as a result of Defendants' false designation of origin and acts of unfair competition; and (iii) the costs of this action.

60. Defendants' intentional and willful misconduct renders this an exceptional case, entitling Mr. Hill to attorney's fees and interest.

### Count III – Contributory Trademark Infringement, Unfair Competition, and False Designation of Origin (As to Defendants)

61. Mr. Hill realleges and incorporates by reference the averments of paragraphs 1 – 43 as if set forth fully in this paragraph.

62. Defendants are engaging in illegal conduct, including without limitation, the advertisement, promotion, offer for sale, sale, and provision of a restaurant using a confusingly similar mark to Mr. Hill's CHARLIE D'S Trademarks, in violation of the Lanham Act.

63. Defendants have actual knowledge of the illegal activities from, at a minimum, written notice of these activities from Mr. Hill's counsel to Defendants.

11

64. With complete disregard to Mr. Hill's written notice and Mr. Hill's rights in the CHARLIE D'S Trademarks, Defendants have continued to materially encourage, enable, and facilitate Defendant Charlie D's Catfish Cabin's illegal activities of advertising, promoting, offering, selling, and providing a restaurant using a confusingly similar mark to Mr. Hill's CHARLIE D'S Trademarks, and unjustly personally profiting from such activities that blatantly palm off Mr. Hill's goodwill.

65. Defendants are therefore contributorily liable for the illegal and tortious activities alleged in this Complaint, in violation of the Lanham Act and the common law.

66. Mr. Hill has no adequate remedy at law for Defendants' contributory trademark infringement, false designation of origin, and acts of unfair competition, and Mr. Hill has suffered irreparable harm as a result of Defendants' contributing acts.

67. As a result of Defendants' wrongful contributory conduct, Mr. Hill has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, Mr. Hill is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorney's fees, the costs of this action, and any and all other relief authorized by law.

**Count IV – Common Law Trademark Infringement and Unfair Competition**

68. Mr. Hill realleges and incorporates by reference the averments of paragraphs 1 - 43 as if set forth fully in this paragraph.

69. Defendants' acts described in this Complaint constitute trademark infringement and unfair competition in violation of the common law of the State of Missouri by a deliberate course of conduct, all without authorization, license, privilege, or justification.

70. Defendants' acts have created, and unless restrained by this Court will continue to create confusion and deception of the consuming public as to the source of origin of Defendants'

restaurant, to the detriment of Mr. Hill and causing irreparable injury to Mr. Hill, for which Mr. Hill has no adequate remedy at law.

71. Defendants have acted with full knowledge of Mr. Hill's rights in and use of the CHARLIE D'S Trademarks, and without regard to the likelihood of confusion and deception of the public created by Defendants' activities, demonstrating an intentional, willful, and malicious intent to trade on the goodwill of the CHARLIE D'S Trademarks associated with Mr. Hill, to the substantial and irreparable injury of Mr. Hill.

72. As a result of Defendants' acts, Mr. Hill has been damaged and will continue to be damaged in an amount not as yet determined or ascertainable. At a minimum, however, Mr. Hill is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorneys' fees and costs, and any and all other relief authorized by law.

## **Prayer for Relief**

Based on the foregoing, Mr. Hill requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award Mr. Hill relief, including without limitation, the following:

1. Preliminarily and permanently enjoin and restrain Defendants, and their officers, directors, agents, dealers, representatives, servants, and employees, and all others acting in concert with Defendants, from:

   a. Advertising, marketing, offering for sale, selling, or providing restaurants and any other similar or related services in connection with the CHARLIE D'S Trademarks, or any confusingly similar imitations thereof;

   b. Using the CHARLIE D'S Trademarks, or any confusingly similar iteration thereof, in any manner on or in connection with restaurants or related services;

c. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services related to those offered by Mr. Hill that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the CHARLIE D'S Trademarks;

d. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Mr. Hill, or are sponsored, authorized, or endorsed by Mr. Hill, or are in any manner connected to or related to Mr. Hill;

e. Using any domain or subdomain name containing or consisting of the CHARLIE D'S Trademarks;

f. Using the CHARLIE D'S Trademarks in keywords for sponsored online advertising;

g. Using the CHARLIE D'S Trademarks in metatags on any of its websites;

h. Passing off, palming off, or assisting in passing off or palming off goods or services as those of Mr. Hill, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

i. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Paragraph 1;

2. Direct Defendants to file with this Court and serve on Mr. Hill's counsel within thirty (30) days after the service on Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3. Order Defendants to provide Mr. Hill with an accounting of any and all profits derived by Defendants from the sale or rendering of restaurants in connection with the CHARLIE D'S Trademarks;

4. Award Mr. Hill Defendants' profits resulting from the acts alleged in this Complaint in order to redress Defendants' unjust enrichment and to deter their infringement of the CHARLIE D'S Trademarks, pursuant to 15 U.S.C. § 1117(a)(1);

5. Award Mr. Hill any damages sustained and the costs of this action, pursuant to 15 U.S.C. § 1117(a)(2) and (a)(3);

6. Triple any damages and increase any profits awarded to the amount this Court finds just, pursuant to 15 U.S.C. § 1117(a);

7. Award Mr. Hill damages, together with prejudgment interest, for the lost sales, loss of goodwill, and other damages suffered by Mr. Hill as a result of the acts of Defendants' trademark infringement, unfair competition, and injury to Mr. Hill's business reputation, pursuant to the laws of the State of Missouri;

8. Grant to Mr. Hill such further relief as may be equitable and proper.

## Jury Demand

Mr. Hill demands a trial by jury on all issues so triable.

Dated: September 15, 2025

Respectfully Submitted:

By: */s/ **Scott R. Brown***
Scott R. Brown, Missouri Bar No. 51733
Hovey Williams LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel: (913) 647-9050
Fax: (913) 647-9057
sbrown@hoveywilliams.com

*Attorneys for Plaintiffs Gary Hill and Charlie Crab LLC*